UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROBERT D. GRAHAM

    Applicant,

v.                                           CASE NO. 8:23-cv-525-SDM-TGW

SECRETARY, Department of Corrections,

    Respondent.
_____/

## ORDER

Graham applies (Doc. 1) under 28 U.S.C. § 2254 for the writ of habeas corpus and challenges his convictions for both manslaughter and child abuse, for which Graham is imprisoned for fifteen years. Numerous exhibits ("Respondent's Exhibit") support the response. (Doc. 12) The respondent admits the application's timeliness (Doc. 7 at 2) but argues that, of the four grounds for relief, the first three grounds are not fully exhausted and the last ground lacks merit.

I.    **BACKGROUND**[*]

Robert Graham and Destini Presley begat Princeton Graham, who Destini left with Graham for the 2014 Christmas weekend when Princeton was four months old. The following day (December 27th) Presley went to Graham's girlfriend's home to

---

[*] This summary of the facts derives from Graham's brief on direct appeal. (Respondent's Exhibit 18)

check on Princeton, whom she awakened and had no concern about his well-being. The next day (December 28th) Graham gave no indication that anything was amiss when he spoke with Presley. On December 29th Graham's sister called and told Presley that Princeton had stopped breathing. When she arrived at the hospital, Presley discovered that the doctors had disconnected Princeton from life support.

On a couple of occasions while he was in Graham's care, Princeton began choking while feeding. In response Graham admits that on one occasion he "hit" Princeton on the back and on another he began "beating" him on the back. In a recorded statement to the police Graham stated, "I guess I was hitting him too hard." Graham's girlfriend testified that she observed Graham "slamming" Princeton on the bed, "grab[ing] him and bounc[ing] him back and forth," and "jerk[ing] him in different directions" causing his "head to bob back and forth." Presley testified that she had previously cautioned Graham about his treating Princeton too "rough," bouncing him too aggressively, "snatching" him out of annoyance, and shaking him. The emergency room doctor testified that she concluded that "the evaluation was consistent with abusive head trauma," that Princeton had "traumatic brain injury," and that "infant death was imminent."

The state charged Graham with both aggravated child abuse causing great bodily harm (Count One) and manslaughter (Count Two). The jury found Graham guilty of both the lesser included offense of child abuse under Count One and the charged offense of manslaughter under Count Two. Graham serves concurrent terms of imprisonment of five years for Count One and fifteen years for Count Two. Graham

was unsuccessful in challenging his convictions and sentences both on direct appeal and in several post-conviction proceedings.

## II.     EXHAUSTION AND PROCEDURAL DEFAULT

The respondent argues that Grounds One, Two, and Three are procedurally barred from federal review, primarily because Graham failed to fully exhaust his available state court remedies. An applicant must present each claim to the state courts before presenting the claim to a federal court. "[E]xhaustion of state remedies requires that petitioners 'fairly presen[t]' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). *Accord Rose v. Lundy*, 455 U.S. 509, 518–19 (1982) ("A rigorously enforced total exhaustion rule will encourage state prisoners to seek full relief first from the state courts, thus giving those courts the first opportunity to review all claims of constitutional error."). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese,* 541 U.S. 27, 32 (2004) (citing *Duncan*).

**Grounds One–Three:**

Graham alleges that the trial court erred (1) in denying his motion to arrest judgment because the verdict was both contrary to the law (Ground One) and contrary to the weight of the evidence (Ground Two) and (2) in denying his renewed motion for

judgment of acquittal. The respondent correctly argues that Graham presented each claim to the state court only as a violation of state law, that is, he failed to "fairly present" each claim to the state courts as a federal claim "to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Henry*, 513 U.S. at 365. A review of Graham's brief on direct appeal (Respondent's Exhibit 18) confirms that Graham failed to "federalize" the claims asserted in Grounds One through Three.

The exhaustion requirement is not met if a defendant fails to alert the state appellate court that the trial court allegedly violated a federally protected right. As *Reese* explains, 541 U.S. at 32, an applicant must alert the state court that he is raising a federal law claim and not just a state law claim.

> A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim "federal."

As a consequence, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982). *See also Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1271, 1345 (11th Cir. 2004) ("The exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.") (citations omitted); *Upshaw v. Singletary*, 70 F.3d 576, 578 (11th Cir. 1995) ("[T]he applicant must have fairly apprised the highest court of his state with the appropriate jurisdiction of the federal rights which allegedly were violated."). An

applicant must present to the federal court the same claim that was presented to the state court. *Picard v. Connor*, 404 U.S. at 275 ("[W]e have required a state prisoner to present the state courts with the same claim he urges upon the federal courts."). "[M]ere similarity of claims is insufficient to exhaust." *Duncan*, 513 U.S. at 366.

The failure to properly exhaust each available state court remedy causes a procedural default of the unexhausted claim. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) ("Boerckel's failure to present three of his federal habeas claims to the Illinois Supreme Court in a timely fashion has resulted in a procedural default of those claims."); *see also Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) ("[W]hen it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, we can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief."). State procedural rules preclude Graham from returning to state court to present his federal claim in a second, untimely direct appeal. *See* Fla. R. App. P. 9.140(b)(3). Graham's failure to properly present his federal claim in the state court results in a procedural default. *See Shinn v. Ramirez,* 596 U.S. 366, 378 (2022) (noting that if a prisoner failed to present a federal claim to the state court and the state court would dismiss the claim based on a procedural failure, the claim is technically exhausted because, in the habeas context, "state-court remedies are . . . 'exhausted' when they are no longer available, regardless of the reason for their unavailability.") (quoting *Woodford v. Ngo,* 548 U.S. 81, 92–93 (2006)).

As determined above, Graham procedurally defaulted Grounds One through Three by not "federalizing" each ground in state court, and, as a consequence, each ground is barred from federal review absent a showing of "actual cause and prejudice" or "manifest injustice." *See generally Coleman v. Thompson*, 501 U.S. 722, 747–51 (1991); *Murray v. Carrier*, 477 U.S. 478, 496 (1986). In his reply (Doc. 8) Graham neither addresses Grounds One through Three nor attempts to show either "cause and prejudice" or a "fundamental miscarriage of justice" to overcome the procedural default. Therefore, Grounds One, Two, and Three are procedurally barred from federal review and not entitled to a determination on the merits. Only Graham's claim of ineffective assistance of trial counsel, as alleged in Ground Four, is entitled to a review on the merits.

### III. STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998). Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), explains this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied — the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 693 (2002). "To meet that standard, a prisoner must show far more than that the state court's decision was 'merely wrong' or 'even clear error.'" *Shinn v. Kayer*, 592 U.S. 111, 118 (2020) (quoting *Virginia v. LeBlanc*, 582 U.S. 91, 94 (2017)). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded

disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see White v. Woodall*, 572 U.S. 415, 427 (2014) ("The critical point is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question . . . .") (citing *Richter*); *Woods v. Donald*, 575 U.S. 312, 316 (2015) ("And an 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice.") (citing *Woodall*, 572 U.S. at 419); *accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell*, 535 U.S. at 694. A federal court must afford due deference to a state court's decision. "AEDPA prevents defendants — and federal courts — from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

When the last state court to decide a federal claim issues a reasoned and explanatory opinion, "a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Wilson v. Sellers*, 584 U.S. 122, 125 (2018). When the relevant state-court decision is not accompanied with reasons for the decision, the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Wilson*, 584 U.S. at 125.

In a *per curiam* decision without a written opinion the state appellate court on direct appeal affirmed Graham's convictions and sentence. (Respondent's Exhibit 21) Similarly, in another *per curiam* decision without a written opinion, the state appellate court affirmed the denial of Graham's Rule 3.850 motion for post-conviction relief. (Respondent's Exhibit 33) The state appellate court's *per curiam* affirmances warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Sec., Dep't of Corr.*, 278 F.3d 1245, 1254 (11th Cir. 2002); *see also Richter*, 562 U.S. at 100 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."); *Bishop v. Warden, GDCP*, 726 F. 3d 1243, 1255–56 (11th Cir. 2013) (describing the difference between an "opinion" or "analysis" and a "decision" or "ruling" and explaining that deference is

accorded the state court's "decision" or "ruling" even absent an "opinion" or "analysis").

Graham bears the burden of overcoming by clear and convincing evidence a state court's determination of fact. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir. 2001). The state post-conviction court's rejection of Graham's claims warrants deference in this federal action. (Order Denying Motion for Post-Conviction Relief, Respondent's Exhibit 29) Graham's federal application presents the same ground of ineffective assistance of counsel that he presented to the state courts.

### IV.   INEFFECTIVE ASSISTANCE OF COUNSEL

Graham claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim, as *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*,

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

An applicant must prove both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

Graham must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant

setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 690. To meet this burden, Graham must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. *See Pye v. Warden, Ga. Diagnostic Prison*, 50 F.4th 1025, 1041–42 (11th Cir. 2022) (*en banc*) (brackets original) ("Applying AEDPA to *Strickland*'s prejudice standard, we must decide whether the state court's conclusion that [counsel's] performance . . . didn't prejudice [petitioner] — that there was no substantial likelihood of a different result — was so obviously wrong that its error lies beyond any possibility for fairminded disagreement.") (internal quotation marks omitted).

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690–91. As *Dunn v. Reeves*, 594 U.S. 731, 739 (2021) (italics original), explains, deference is to both counsel's and the state court's decisions, recognizing that counsel decides strategic options based on both limited resources and limited time.

> [W]e owe deference to both Reeves' counsel *and* the state court. As to counsel, we have often explained that strategic decisions — including whether to hire an expert — are entitled to a "strong presumption" of reasonableness. *Harrington v. Richter*, 562 U.S. 86, 104, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011). Defense lawyers have "limited" time and resources, and so must choose from among " 'countless' " strategic options. *Id.*, at 106–107, 131 S. Ct.

> 770. Such decisions are particularly difficult because certain tactics carry the risk of "harm[ing] the defense" by undermining credibility with the jury or distracting from more important issues. *Id.*, at 108, 131 S. Ct. 770.

And *White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992), explains that Graham cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

Additionally, *Hittson v. GDCP Warden*, 759 F.3d 1210, 1267 (11th Cir. 2014), discusses the required extent of counsel's investigation:

> [W]e have explained that "no absolute duty exists to investigate particular facts or a certain line of defense." *Chandler*, 218 F.3d at 1317. "[C]ounsel has a duty to make reasonable investigations or make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066 (emphasis added). "[C]ounsel need not always investigate before pursuing or not pursuing a line of defense. Investigation (even a nonexhaustive, preliminary investigation) is not required for counsel reasonably to decline to investigate a line of defense thoroughly." *Chandler*, 218 F.3d at 1318. "In assessing the reasonableness of an attorney's investigation . . . a court must

> consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins*, 539 U.S. at 527, 123 S. Ct. at 2538.

*See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (confirming that counsel has no duty to raise a frivolous claim).

Under Section 2254(d), Graham must prove that the state court's decision "(1) [was] contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) [was] based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Sustaining a claim of ineffective assistance of counsel is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105; *see also Dunn v. Reeves*, 594 U.S. at 739 ("This analysis is 'doubly deferential' when, as here, a state court has decided that counsel performed adequately."); *Pinholster*, 563 U.S. 202 (An applicant must overcome this "'doubly deferential' standard of *Strickland* and the AEDPA."); *Nance v. Warden, Ga. Diag. Prison*, 922 F.3d 1298, 1303 (11th Cir. 2019) ("Given the double deference due, it is a 'rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.'") (quoting *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011)); *Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim — which is governed by the deferential *Strickland* test — through the lens of AEDPA

deference, the resulting standard of review is 'doubly deferential.'"). "And in reviewing the work of their peers, federal judges must begin with the 'presumption that state courts know and follow the law.' Or, in more concrete terms, a federal court may grant relief only if *every* 'fairminded juris[t]' would agree that *every* reasonable lawyer would have made a different decision." *Reeves*, 594 U.S. at 739–40 (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002), and *Richter*, 562 U.S. at 101) (italics and brackets original).

**Ground Four:**

Graham alleges that trial counsel was ineffective by not investigating and presenting an expert witness to refute the prosecution's expert witness's testimony that Graham's actions were the cause of the infant's head trauma. The state court adopted the state's opposition to Graham's motion for post-conviction relief, which opposition is based on *Strickland's* standard of deficient performance and prejudice, and summarily denied the motion as follows:

> The Defendant argued that trial counsel was ineffective for failing to present an expert witness to testify regarding the infant's cause of death. The State responds that trial counsel effectively used cross examination of the State's witnesses to advance the theory of defense. Counsel's extensive cross examination showed that the doctors were working backwards in an effort to support law enforcement's investigation and that the medical history of the child was not thoroughly examined. The State argues that the Defendant has failed to show how the absence of an expert witness prejudiced him given the overwhelming evidence of guilt presented by the State.
>
> After review of the State's arguments, citations, and attachments to its Response, adopted and incorporated herein, the Court agrees that Defendant's claim should be denied.

Although the state court's order omits citing *Strickland* as the standard for an ineffective-assistance-of-counsel claim, no explicit citation is required.  A state court need not cite Supreme Court precedent (or even be aware of it) if the decision is consistent with the precedent.  *Early v. Packer*, 537 U.S. 3, 8 (2002); *Parker v. Sec'y of Dep't of Corr.*, 331 F.3d 764, 775 86 (11th Cir. 2003).  In Florida, *Strickland* governs an ineffective assistance of counsel ground.  *Walls v. State*, 926 So. 2d 1156 (Fla. 2006).  The state post-conviction court analyzed Graham's ineffective assistance of counsel grounds consistent with *Strickland* — not contrary to *Strickland* — by both adopting the state's *Strickland* analysis and requiring proof of both deficient performance and prejudice.  Consequently, because he cannot show that the state court's decision is contrary to *Strickland*, Graham must show that the state court's ruling was either an unreasonable application of *Strickland's* principle or an unreasonable determination of the facts.

Graham shows neither an unreasonable application nor an unreasonable determination of facts.  Instead of disputing the facts, Graham contends that, under Section 2254(d)(1), the state court's decision "involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States . . . ."  However, Graham cites no federal decision — from neither the Supreme Court nor any other federal court — to show that the state post-conviction court's decision is an unreasonable application of *Strickland*.  Graham relies wholly on *Spurgeon v. State*, 298 So. 3d 726 (2DCA 2020), which determined that, under the unique circumstances presented, trial counsel's failure to present an expert witness to counter the prosecution's expert witnesses was both deficient performance and prejudicial.  In

opposing Graham's motion for post-conviction relief in state court, the state distinguished *Spurgeon* from Graham's circumstance because Graham's trial counsel extensively and thoroughly cross-examined the prosecution's expert witnesses, concluding that Graham had "not shown how the absence of a hypothetical expert resulted in prejudice to his defense, given the overwhelming evidence against him." (Respondent's Exhibit 29 at 36)  Graham's absence of an expert witness who has proffered an opinion that would support his defense and counter the prosecution's expert witnesses is particularly noteworthy because, to prove that counsel's failure to call a certain witness was ineffective assistance, Graham must present more than his speculation about the proposed testimony.  "[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit.  A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted).  *See also Gilreath v. Head*, 234 F.3d 547, 551 n.12 (11th Cir. 2000) (Petitioner "must show that witnesses not presented at trial actually were available and willing to testify at time of trial.") (*citing Horsley v. State of Alabama*, 45 F.3d 1486, 1494–95 (11th Cir. 1995)); *Estiven v. Sec'y, Dep't of Corr.*, 2017 WL 6606915 at *4 (11th Cir. Sept. 28, 2017) (unpublished) (citing *Ashimi* for the proposition that "speculation cannot form the basis of a valid claim") (denial of a certificate of appealability).

Graham complains that, in affirming the denial of post-conviction relief, the state appellate court failed to follow its own precedent in *Spurgeon*. However, an alleged defect in a state collateral proceeding provides no basis for habeas relief. *See Carroll v. Sec'y, Dep't of Cor.*, 574 F.3d 1354, 1365 (11th Cir. 2009) (holding that a habeas applicant's claim — the state court violated his due process rights when it summarily denied his post-conviction claim without an evidentiary hearing — did not state a claim on which a federal court may grant habeas relief); *Quince v. Crosby*, 360 F.3d 1259, 1262 (11th Cir. 2004) ("[W]hile habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief.). A challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment — that is, the conviction itself — consequently, habeas relief is not an appropriate remedy. *See Carroll*, 574 F.3d at 1365; *Quince*, 360 F.3d at 1261–62. Furthermore, a state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief because no question of a constitutional nature is involved. *See Carroll*, 574 F.3d at 1365.

## V. CONCLUSION

Graham fails to meet his burden to show that the state court's decision was either an unreasonable application of controlling Supreme Court precedent or an unreasonable determination of fact. As *Burt v. Titlow*, 571 U.S. 12, 19–20 (2013), states:

> Recognizing the duty and ability of our state-court colleagues to adjudicate claims of constitutional wrong, AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires "a state prisoner [to] show that the state court's ruling on the claim

>being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. [86, 103] (2011). "If this standard is difficult to meet" — and it is — "that is because it was meant to be." *Id.*, at [102]. We will not lightly conclude that a State's criminal justice system has experienced the "extreme malfunctio[n]" for which federal habeas relief is the remedy. *Id.*, at [103] (internal quotation marks omitted).

Graham's application for the writ of habeas corpus (Doc. 1) is **DENIED**. The clerk must enter a judgment against Graham and **CLOSE** this case.

# DENIAL OF BOTH
# A CERTIFICATE OF APPEALABILITY
# AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Graham is not entitled to a certificate of appealability ("COA"). A prisoner seeking a writ of habeas corpus has no entitlement to appeal a district court's denial of his application. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a COA, Graham must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001). Because he fails to show that reasonable jurists would "find debatable" either the merits of the grounds or the procedural issues, Graham is entitled to neither a COA nor leave to appeal *in forma pauperis*.

- 19 -

A certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Graham must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on December 17, 2025.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE